# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULTRALIFE CORPORATION,<br><br>  Plaintiff,<br><br>v.<br><br>TARGUS GROUP INTERNATIONAL, INC.<br>and TARGUS, INC.<br><br>  Defendants. | Civil Action No. 6:13-cv-6225<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Ultralife Corporation ("Ultralife"), for its Complaint against Defendants, Targus Group International Inc. and Targus, Inc. (collectively, "Targus"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement and federal unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and for trademark infringement, unfair competition, and deceptive trade practices under New York State law, based on Defendants' unauthorized use of Ultralife's federal and common law rights to its ULTRALIFE trademarks.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), because it involves claims arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

3. The Court has personal jurisdiction over Defendants because Defendants transact business and actively market and sell their products through retail locations and through their

website (www.targus.com) in the State of New York and this judicial district out of which Ultralife's claims arise, and Defendants have committed tortious acts in the State of New York and this judicial district, including the offering for sale of goods under the infringing trademarks.

## THE PARTIES

4. Ultralife is a corporation organized and existing under the laws of Delaware and has a principal place of business at 2000 Technology Parkway, Newark, New York 14513.

5. Upon information and belief, Defendant Targus, Inc. is a corporation organized and existing under the laws of the State of New York, with a place of business at 1211 North Miller Street, Anaheim, California 92806, and may be served through its registered agent, CT Corporation System, 111 Eighth Avenue, New York, New York 10011.

6. Upon information and belief, Defendant Targus Group International Inc. is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 1211 North Miller Street, Anaheim, California 92806, is registered to do business in the State of New York as a foreign corporation, and may be served through its registered agent, CT Corporation System, 111 Eighth Avenue, New York, New York 10011.  Upon information and belief, Targus Group International Inc. is the parent corporation of Targus, Inc.

## FACTUAL BACKGROUND

### Ultralife's Business and its ULTRALIFE Marks

7. Ultralife is a publicly-traded (NASDAQ: ULBI) and global corporation that offers products and services ranging from portable and standby power solutions to communications and electronics systems.  Since at least the 1980s, Ultralife, through its predecessor Eastman Kodak Company, adopted and began to use the distinctive name and trademark ULTRALIFE to identify the source of its goods and services.  Since its inception and aforesaid adoption and first use,

Ultralife has continuously used the distinctive name and trademark ULTRALIFE in interstate commerce to identify the source of its goods and services.

8. Ultralife has customers throughout the United States and around the globe. Over the past twenty years, Ultralife has sold more than one hundred million products, including through national retail outlets such as Radio Shack, Lowe's, Menard's and Sears, and other retail locations in the United States and Europe.

9. Trademarks are an important aspect of Ultralife's business. Ultralife uses its ULTRALIFE trademarks (including the logo below) consistently and prominently on and in connection with a wide range of goods, including, for example, battery and energy products (*e.g.*, batteries, chargers, power supplies, cables, and accessories) and communication and electronics systems (*e.g.*, computer and equipment cases, power supplies, cables, connector assemblies, amplifiers, adapters, and accessories). Attached as Exhibit A is a product guide for Ultralife's battery and energy products showing use of its ULTRALIFE Marks on certain products.



10. Ultralife also uses its ULTRALIFE trademarks consistently and prominently on a wide range of promotional products (*e.g.*, laptop bags, notebook portfolios, USB drives, and mouse pads) distributed to customers and potential customers.

11. Ultralife uses its ULTRALIFE trademarks widely in broad and targeted marketing campaigns across traditional and electronic media, and in the distribution of Ultralife's products offered for sale and promotional products at national and international trade shows.

12. Ultralife has expended a substantial amount of money and effort in advertising and promotion its ULTRALIFE trademarks.

13. As a result of Ultralife's extensive use and promotion of its ULTRALIFE trademarks in interstate commerce, Ultralife owns common law rights in its trademarks as well as the following federal trademark registrations set forth in the chart below (collectively, the "ULTRALIFE Marks"):

| **Registered Mark** | **Registration No.** | **Registration Date** |
| --- | --- | --- |
| ULTRALIFE | 1,423,709 | January 6, 1987 |
| ULTRALIFE BATTERIES INC. | 1,908,249 | August 1, 1995 |
| ULTRALIFE | 2,166,727 | June 23, 1998 |
| ULTRALIFE THIN CELL | 2,192,966 | October 6, 1998 |
| ULTRALIFE HIRATE | 2,711,970 | April 29, 2003 |
| ULTRALIFE | 2,864,872 | July 20, 2004 |

14. The federal trademark registrations set forth above are valid and subsisting and are owned by Ultralife, and are now incontestable pursuant to Sections 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065 and 1115(b).

15. Ultralife has also registered its ULTRALIFE marks in foreign countries, including Canada, China, France, Germany, Great Britain, Japan, Mexico, and Russia.

16. For the past two decades, Ultralife has spent considerable time, resources, and efforts to advertise and promote the numerous products and services offered under the well-known and highly regarded ULTRALIFE Marks. As a result of Ultralife's efforts, the ULTRALIFE Marks are widely recognized, not only in the State of New York and the United States, but throughout the world.

17. As a result of Ultralife's extensive use and promotion of its ULTRALIFE Marks in interstate commerce, such marks have acquired distinctiveness and secondary meaning

signifying Ultralife, and Ultralife has built up and owns valuable goodwill which is symbolized by the ULTRALIFE Marks.

18. Attached as Exhibit B are illustrative examples of certain of Ultralife's branded goods (both products for sale and promotional products), including cases, laptop cases, notebook portfolios, laptop adapters, chargers, USB power hubs, USB drives, and mouse pads.

### Defendants' Business and Unauthorized Use of the ULTRALIFE Marks

19. Defendants sell laptop cases and accessories in United States and New York through third-party retailers and through their website, www.targus.com. Upon information and belief, Defendants recently began using the mark ULTRALIFE in connection with a new line of cases and accessories, long after Ultralife first used the ULTRALIFE Marks, in violation of Ultralife's rights. For example, attached as Exhibit C is a product brochure showing Defendants use of the "Ultralife" name to market their cases and accessories.

20. Defendants' use of the mark ULTRALIFE in connection with the advertising, promotion, and/or sale of their cases and accessories is confusingly similar to Ultralife's use of the ULTRALIFE Marks on its products offered for sale and promotional products, as demonstrated, for example, by comparing Exhibit B (Ultralife's cases and accessories) and Exhibit C (Defendants' cases and accessories).

21. Defendants' use of the ULTRALIFE Marks is in a manner likely to cause confusion, to cause mistake, and/or to deceive as to source of origin among purchasers and/or users of those goods. For example, attached as Exhibit D are search results from Amazon.com showing certain of Ultralife's products listed with Defendants' products under the "Laptop & Netbook Computer Accessories" category.

22. Defendants have been on actual notice of the ULTRALIFE Marks since at least August 2012 when the U.S. Trademark Office rejected a trademark application filed by Defendants for the mark TARGUS ULTRALIFE, Serial No. 85630476, because of a conflict with the ULTRALIFE Marks. In addition, Defendants have had constructive notice of the ULTRALIFE Marks through Ultralife's use of the ® symbol in connection with such marks.

23. Defendants have made blatant mischaracterizations and incorrect statements to U.S. Trademark Office in connection with their pending trademark application for the mark TARGUS ULTRALIFE. For example, Defendants mistakenly characterized Ultralife as a whole, a "battery company." Not only is this an inaccurate and narrow description of Ultralife's business, but it is directly contrary to Ultralife's successful branding and marketing efforts over the past years. Indeed, Ultralife's corporate name change from "Ultralife Batteries, Inc." to "Ultralife Corporation" in 2008 was initiated primarily to dovetail Ultralife's public name with the broader company into which it had evolved. Moreover, Ultralife has used and uses its ULTRALIFE Marks consistently and prominently on and in connection with its wide range of products, which include, for example, battery and energy products (*e.g.*, batteries, chargers, power supplies, cables, and accessories) and communication and electronics systems (*e.g.*, computer and equipment cases, power supplies, cables, connector assemblies, amplifiers, adapters, and accessories). In addition, Ultralife has used and uses its ULTRALIFE Marks consistently and prominently on a wide range of promotional products (*e.g.*, laptop bags, notebook portfolios, USB drives, and mouse pads) over the years.

24. Defendants have also incorrectly represented to the U.S. Trademark Office that Defendants and Ultralife "are very different companies, each with very different goods, very different connotations of their marks, and very different public images." Indeed, this misleading

and self-serving statement is contradicted by the fact that both companies sell and distribute cases and accessories. Defendants' use of the mark ULTRALIFE in connection with the advertising, promotion, and/or sale of their products is confusingly similar to Ultralife's use of the ULTRALIFE Marks on its products. In addition, Defendants' unauthorized use of the ULTRALIFE Marks is in a manner likely to cause confusion, to cause mistake, and/or to deceive as to source of origin among purchasers and/or users of those goods.

25. Defendants' unauthorized use of the mark ULTRALIFE in connection with the advertising, promotion, and/or sale of their products were taken and/or continued in willful, deliberate, and/or intentional disregard of Ultralife's rights.

26. This case is exceptional under the Lanham Act.

27. By reason of Defendants' acts alleged herein, Ultralife has suffered and will continue to suffer damage in amount which will be determined at trial.

28. If the acts of Defendants are allowed to continue, Ultralife will continue to suffer irreparable injury for which it has no adequate remedy at law.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

29. Ultralife repeats and realleges each and every allegation of paragraphs 1 through 28 as though fully set forth herein.

30. Defendants' unauthorized use of the ULTRALIFE Marks in commerce and in connection with their products, including, for example, cases and accessories, is likely to cause confusion or mistake, or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1114.

31. On information and belief, Defendants have acted with full knowledge of Ultralife's prior use of and statutory and common law rights to the ULTRALIFE Marks and in willful violation of 15 U.S.C. § 1114.

32. By reason of Defendants' acts and unauthorized use of ULTRALIFE, Ultralife has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and, thus, Ultralife is entitled to injunctive relief.

33. In addition to the irreparable harm suffered, by reason of Defendants' acts and unauthorized use of ULTRALIFE, Ultralife has suffered, and will continue to suffer, damages in an amount to be proved at trial.

## COUNT II
## UNFAIR COMPETITION UNDER THE LANHAM ACT

34. Ultralife repeats and realleges each and every allegation of paragraphs 1 through 33 as though fully set forth herein.

35. Ultralife has used and continues to use the ULTRALIFE Marks in commerce throughout the United States and in New York for its goods, services, and promotional products. Through such use, Ultralife has gained common law trademark rights and built significant goodwill in the ULTRALIFE Marks.

36. Defendants' unauthorized use of ULTRALIFE in commerce and in connection with their products, including, for example, cases and accessories, is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Ultralife in violation of 15 U.S.C. § 1125(a).

37. Defendants' unauthorized use of ULTRALIFE in commerce and in connection with their products, including, for example, cases and accessories, is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' products and commercial activities by Ultralife in violation of 15 U.S.C. § 1125(a).

38. By reason of Defendants' acts and unauthorized use of ULTRALIFE, Ultralife has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and, thus, Ultralife is entitled to injunctive relief.

39. In addition to the irreparable harm suffered, by reason of Defendants' acts and unauthorized use of ULTRALIFE, Ultralife has suffered and will continue to suffer damages in an amount to be proved at trial.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT

40. Ultralife repeats and realleges each and every allegation of paragraphs 1 through 39 as though fully set forth herein.

41. Ultralife has used the ULTRALIFE Marks in commerce in connection with its goods, services, and promotional products since long prior to the acts complained of herein, and, therefore, Ultralife owns common law rights to use the ULTRALIFE Marks in New York.

42. Defendants' unauthorized use of the ULTRALIFE Marks in commerce and in connection with their products, including, for example, cases and accessories, is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' products and commercial activities by Ultralife in violation of New York common law.

43. By reason of Defendants acts and unauthorized use of ULTRALIFE, Ultralife has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and, thus, Ultralife is entitled to injunctive relief.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION

44. Ultralife repeats and realleges each and every allegation of paragraphs 1 through 43 as though fully set forth herein.

45. By the actions described above, Defendants has engaged in unfair competition in violation of Ultralife's rights.

46. Ultralife has used and continues to use the ULTRALIFE Marks in commerce throughout the United States and in New York for its goods, services, and promotional products. Through such use, Ultralife has gained common law trademark rights and built significant goodwill in the ULTRALIFE Marks.

47. Defendants have intentionally and with bad faith misappropriated and are attempting to misappropriate Ultralife's goodwill in violation of New York unfair competition law through their deliberate use of the ULTRALIFE Marks.

48. Defendants actions are likely to cause confusion, mistake, and deception among consumers and the public as to the sponsorship, affiliation, connection, or association of Defendants with Ultralife, and/or as to the source, origin, sponsorship, or approval of Defendants' products and commercial activities by Ultralife.

49. Defendants' actions and unauthorized use of ULTRALIFE constitutes unfair competition in violation of New York common law.

50. By reason of Defendants' acts and unauthorized use of ULTRALIFE, Ultralife has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and, thus, Ultralife is entitled to injunctive relief.

51. By reason of Defendants' acts and unauthorized use of ULTRALIFE, Ultralife has suffered and will continue to suffer damages in an amount to be proved at trial.

## COUNT V
## DECEPTIVE TRADE PRACTICES UNDER NEW YORK GBL § 349

52. Ultralife repeats and realleges each and every allegation of paragraphs 1 through 51 as though fully set forth herein.

53. Ultralife has used and continues to use the ULTRALIFE Mark in commerce throughout the United States and in New York for its goods, services, and promotional products. Through such use, Ultralife has gained common law trademark rights in the ULTRALIFE Mark.

54. Ultralife has earned and acquired significant goodwill in the ULTRALIFE Mark in New York through its long and continuous use of such mark in this state.

55. By their unauthorized use of ULTRALIFE, Defendants have created a likelihood of confusion or mistake and misled and deceived consumers as to the source, sponsorship, approval, endorsement, or certification of their products.

56. By their unauthorized use of ULTRALIFE, Defendants have created a likelihood of confusion or mistake and misled and deceived consumers as to the affiliation, connection or association of Defendants and their products with Ultralife.

57. Defendants willfully engaged in these deceptive trade practices and willfully caused the likelihood of confusion and misled and deceived consumers, as described above.

58. Defendants' use of ULTRALIFE is materially misleading, confusing, and deceiving to consumers, as described above.

59. This unauthorized use of ULTRALIFE will significantly impact the public as actual and potential consumers of Defendants' products because of the actual confusion, likelihood of confusion and misleading of the public, as described above.

60. By reason of Defendants' deceptive trade practices, Ultralife has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and, thus, Ultralife is entitled to injunctive relief.

61. In addition to the irreparable harm suffered, Ultralife has suffered and will continue to suffer damages in an amount to be proved at trial.

**JURY TRIAL DEMAND**

Ultralife requests a trial by jury on all its claims so triable, other than its request for injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Ultralife requests that the Court enter judgment in its favor on all counts and against Defendants, that the Court find that the above acts were willful and intentional making this an exceptional case, and that the Court grant the following relief:

A. A preliminary and permanent injunction enjoining, restraining, and/or requiring Defendants and their associates, agents, servants, employees, officers, directors, representatives, successors, assigns, affiliates, and all persons in active concert or participation with Defendants, including without limitation, any and all manufacturers of Defendants' products at the direction of or on behalf of Defendants:

1. from all use of the ULTRALIFE Marks and any other marks consisting in whole or in part of ULTRALIFE in connection with its business, including but not limited to use of ULTRALIFE on its website, in the marketplace, and on marketing and solicitation products;

2. from using any trademark, service mark, name, logo, or source designation of any kind that is confusingly similar to Ultralife's ULTRALIFE Marks, or is likely to cause confusion, mistake, deception, or public misunderstanding that Defendants' products are those of Ultralife's or are sponsored by or in any way related to Ultralife;

3. from engaging in any infringing activity including advertising, promoting, marketing, distributing, selling, and offering for sale, any goods or services in connection with any mark similar to Ultralife's ULTRALIFE Marks;

      4.    to file with the Court and serve on Ultralife, within thirty (30) days after the service on Defendants of such injunction, a report in writing under oath setting forth in detail the manner in which Defendants has complied with the injunction;

    B.    An accounting of Defendants' profits earned as a result of its wrongful actions;

    C.    Damages sustained by Ultralife as a result of Defendants' wrongful actions;

    D.    Ultralife's costs of this suit including reasonable attorneys' fees, expenses, and disbursements;

    E.    Treble damages pursuant to 15 U.S.C. § 1117(b) as a result of Defendants' willful acts of infringement and wrongful conduct;

    F.    Pre-judgment interest on all damages; and

    G.    All other just and proper relief.

Dated:  April 30, 2013

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

*/s/ Jeremy P. Oczek*

Jeremy P. Oczek, Esq.
40 Fountain Plaza, Suite 600
Buffalo, New York 14202
Telephone:  (716) 566-2800
Email:  jpoczek@bsk.com

Edward P. Hourihan, Jr., Esq.
350 Linden Oaks, Suite 310
Rochester, New York 14625
Telephone:  (585) 362-4700
Email:  ehourihan@bsk.com

COUNSEL FOR PLAINTIFF ULTRALIFE CORPORATION